UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAVERICK T. TURNER,

        Plaintiff,

                                    Case No. 10-cv-10944

v.                                     Paul D. Borman
                                     United States District Judge


UNITED STATES OF AMERICA,

        Defendant.

_____/

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. NO. 13)

        This matter is before the Court on Defendant's Motion for Summary Judgment (Dkt. No. 13.) Plaintiff has filed a response (Dkt. No. 15) and Defendant has filed a reply (Dkt. No. 16.)  A hearing was held on July 20, 2011.  For the reasons that follow, the Court GRANTS Defendant's motion for summary judgment and DISMISSES Plaintiff's Complaint with prejudice.

## INTRODUCTION

        Plaintiff filed this Federal Tort Claims action against Defendant United States, the owner and operator of the Flint Post Office in Flint, Michigan, claiming that Defendant owed a duty to Plaintiff, a business invitee, to keep the surface of its parking lot reasonably safe for pedestrian traffic. (Compl. ¶ 6.)  Plaintiff claims to have slipped and fallen on some loose gravel and/or a pothole in a paved parking lot at the Flint Post Office on March 24, 2009. (Compl. ¶ 5.)  As a result of the fall, Plaintiff claims to have suffered a fractured left ankle and lower leg that required repeated surgical

procedures. (Compl. ¶ 8.) Plaintiff seeks damages in excess of $500,000 for medical expenses,

physical, mental and emotional pain and distress and also claims in excess of $500,000 in lost

earnings, both present and future. (Compl. ¶¶ 9-11.) Plaintiff submitted a claim for personal injuries

with the National Tort Center of the United States Postal Service on or about April 28, 2009. The

United States Postal Service denied Plaintiff's claim on October 7, 2009. (Compl. ¶¶ 12-13.)

Plaintiff filed this action against the United States on March 9, 2010. (Dkt. No. 1, Complaint.) On

January 31, 2011, Defendant filed this motion for summary judgment. For the reasons that follow,

the Court GRANTS the motion.

I.      **FACTUAL BACKGROUND**[1]

A.      **Plaintiff's Fall**

On March 24, 2009, Plaintiff Maverick T. Turner drove to the United States Post Office

located at 250 East Boulevard Drive in Flint, Michigan at approximately 1:00 p.m. to mail some

papers and packages. (Def.'s Mot. Ex. 4, Deposition of Maverick T. Turner, December 3, 2010,

22:2-4; 23:3-16.) Plaintiff drove to the Post Office to mail some paperwork and CDs that related

to his music production business. (*Id.* 23:8-24:9.) Plaintiff's friend, Marshae Johnson, accompanied

Plaintiff to the Post Office. (*Id.* 24:21-25:5.)

The customer parking lot at the Flint Post Office is located immediately in front of, or west

of the Post Office, between the building and East Boulevard and has angled parking spots on either

side of a one-way southbound driveway. (Def.'s Mot. Ex. 3, Declaration of Richard J. Adomatis,

January 28, 2011 ¶¶ 4-6; Adomatis Decl. Ex. C, aerial photograph of Post Office; Adomatis Decl.

---

[1]  Plaintiff states in his response to Defendant's motion for summary judgment that the facts as
recited by Defendant in its motion are accurate, although incomplete. (Pl.'s Resp. 4.)

Ex. E, photograph of Post Office parking area.) Plaintiff parked in the fourth or fifth west-facing angled spot after turning into the one-way driveway. (Def.'s Mot. Ex. 4, Turner Dep. 30:2-19; 51:16-52:24.)

Plaintiff stepped out of his car, wearing a brand new pair of Rockport walking shoes, and took about 15 steps toward the entrance to the Post Office when he slipped on some loose gravel and fell, somehow catching his foot in a pothole, and breaking his left ankle and lower leg. (Def.'s Mot. Ex. 4, Turner Dep. 32:16-33:9, 38:22-39:25.) Plaintiff explained the mechanism of the fall: "I slipped on the rocks [and] . . . when I came down, something, whatever I stepped on, which had to be a pothole for me for me to step down and make me fall the way I did, and fall backwards onto my leg." (*Id.* 36:1-7.) Plaintiff had not yet crossed the one-way driveway when he fell, and landed somewhere in the middle of the driveway. (*Id.* 33:16-21.) Plaintiff testified that he "was not looking down as [he] would walk," and did not see the gravel or the pothole before he fell, although both were visible to Plaintiff after the fact. (*Id.* 36:22-25.) Plaintiff testified that the pothole was about the size of an 8 1/2 x 11 piece of paper and was about 3-4 inches deep. (*Id.* 37:1-38:14, 44:24-45:1.)

Ms. Johnson confirmed that Mr. Turner tripped and fell somewhere in the middle of the driveway between the angled rows of parking spaces. (Def.'s Mot. Ex. 5, Deposition of Marshae Johnson, December 22, 2010 15:22-16:8.) Ms. Johnson testified that she was walking a few steps in front of Plaintiff and as she turned around, she saw Plaintiff on the ground. Ms. Johnson did not actually observe Plaintiff fall for more than a split second. (*Id.* 10:19-11:7.) Ms. Johnson testified that in the place where Plaintiff was lying on the ground there was "a lot of gravel" and "like little potholes." (*Id.* 13:13-16.) Ms. Johnson recalled that the holes were "not a huge, ten foot pothole, just like little half a foot maybe, potholes, if that, just little bitty holes from just the cement wearing

3

out," maybe "bigger than a softball but not as big as basketball." (*Id.* 16:14-17, 17:13-14.) Ms. Johnson testified that the she and Plaintiff were walking an overlapping path, she just a few steps ahead, and that whatever hazard caused him to fall she "managed to miss." (*Id.* 35:20-21.) After helping Plaintiff back to the car with the help of an unidentified gentleman, Ms. Johnson, at Plaintiff's request, went into the Post Office to mail Plaintiff's materials and then drove Plaintiff to the hospital. (*Id.* 18:23-20:3.)

### B.  The Claim and Investigation

The evening of Plaintiff's fall, his mother, Patricia Patrick, went to the customer lobby of the Flint Post Office and reported that Plaintiff had fallen on the premises and broken his leg. At that time, Ms. Patrick declined to give information about how or where Plaintiff had fallen and indicated that an attorney would contact the Post Office the following day. (Def.'s Mot. Ex. 2, Declaration of Wanda Roundtree, January 24, 2011 ¶ 2.) On March 26, 2009, two days after the accident, Ms. Patrick returned to the Flint Post Office, accompanied this time by Ms. Johnson who had been with Plaintiff when he fell. Ms. Patrick and Ms. Johnson met with then-Postmaster James Price Jr., who asked them to point out the site of the accident, which they did. Price directed Wanda Roundtree, the manager of customer service at the Flint Post Office, to take pictures of the area designated by Ms. Johnson as the site of Plaintiff's fall. (Def.'s Mot. Ex. 2, Roundtree Decl. ¶ 3, Ex. A, photographs.)

On April 28, 2009, Plaintiff submitted an administrative tort claim alleging that at approximately 1:30 p.m. on Tuesday, March 24, 2009, Plaintiff was injured when he slipped and fell in the parking lot in front of the Flint Post Office. (Adomatis Decl. ¶ 2, Ex. A.) A copy of Plaintiff's typewritten statement which accompanied his claim provides in relevant part:

4

I parked in the 5th parking space as you come in on the right near the lawn. It was a damp and very windy day and a lot of rocks were blowing all around the parking lot from a nearby area of the lot. Some were large some were small. The parking lot is in very bad condition, with rocks, potholes, cracked pavements. As I walked outside of the driver's side door I began to walk forward and slipped on some rocks which caused me to fall to the ground and my leg to get trapped under my body. My friend (Marshae Johnson) who had accompanied me to the Post Office was walking ahead of me.

(Adomatis Decl. Ex. B.)

Pursuant to a request from Richard Adomatis, the District Accident & Tort Claims Coordinator, Postmaster Price took additional photographs showing the condition of the Flint Post Office parking lot from the vantage point of the fifth west-facing angled parking spot (approximately the space in which Plaintiff parked) toward the front entrance to Post Office lobby. (Roundtree Decl. ¶ 4; Adomatis Decl. ¶ 5, Ex. D, photographs.) In the photographs taken by Postmaster Price, which were forwarded to Mr. Adomatis, the orange cone depicts where the driver's side door would be of a vehicle parked in the fifth west-facing angled parking spot. (Adomatis Decl. ¶ 5, Ex. D, photographs.)

On June 23, 2009, as part of his investigation of Plaintiff's claim, Mr. Adomatis personally visited the Flint Post Office and took photographs while walking from the front entrance of the customer lobby to the fifth west-facing parking space and back again from that parking space to the lobby entry way. (Adomatis Decl. ¶ 6, Ex. E, photographs.) In these photographs, the fifth parking space is unoccupied and a red truck is parked in the fourth parking spot. (*Id.*) On the day he took the photographs, Mr. Adomatis did not observe any potholes, broken pavement, or excessive gravel or stones in the area of the parking lot where Plaintiff fell. (Adomatis Decl. ¶ 6) A Google Earth photograph depicts an overhead view of the Flint Post Office and the layout of the customer parking

lot in relation to the other areas of the Post Office. (*Id.* ¶ 4, Ex. C.)

Plaintiff does not dispute any of these facts as set forth in Defendant's Motion, and does not contest the authenticity or accuracy of the photographs offered by Defendant, but offers additional photographs and highlights different testimony from Ms. Johnson's deposition. Plaintiff also offers the deposition testimony of two postal employees involved with maintenance and repair at the Flint Post Office. The photographs that Plaintiff offers are unaccompanied by any affidavit describing what they depict or when or by whom they were taken. (Pl.'s Resp. Ex. 5, photographs.) The photographs are date-stamped October 1, 2003. (*Id.*) Matthew Woolworth, a maintenance mechanic responsible for performing repairs in the Flint Post Office parking lot, when shown one of Plaintiff's photographs, speculated that it may have depicted a walkway that goes from the employee parking lot to the employee entrance to the Post Office, nowhere near where Plaintiff fell. (Pl.'s Resp. Ex. 4, Deposition of Matthew Woolworth, December 22, 2010 4:1-17:8-20:4.) Mr. Woolworth testified that he has never patched any potholes near the front entryway of the Post Office where Plaintiff fell. (*Id.* 21:6-15.)

Patrick Collins, the manager of maintenance operations at the Flint Post Office, testified that he initiated some repairs of the parking lot when he was assigned to the Flint Post Office in February, 2009, which was just prior to the instant incident. Specifically, Mr. Collins addressed the area around the collection boxes which Mr. Collins testified was in "terrible" condition, and also initiated repairs to the left turn area into the parking lot where water had accumulated due to poor drainage. (Pl.'s Resp. Ex. 3, Deposition of Patrick Collins, December 22, 2010 5:12-19; 11:10-21.) In the summer of 2009, after the instant incident, Mr. Collins contracted with a clean up company that removed stone, gravel and other debris that had accumulated in the parking lot over the winter

6

months. (*Id.* 15:20-16:4.)  According to Mr. Collins, in the Fall of 2009, the customer parking lot,

the employee parking lot and other areas around the Post Office were resurfaced.  (*Id.* 20:5-21:5.)

When shown one of Plaintiff's photographs, Mr. Collins speculated that the photo may have depicted

the area turning left into the parking lot.  Mr. Collins could not identify the area depicted in another

photograph he was shown, which he could only conclude was "a lot of junk on a parking lot

somewhere."  (*Id.* 24:17-25.)

## II.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a party against whom a claim, counterclaim,

or cross-claim is asserted may "at any time, move with or without supporting affidavits, for a

summary judgment in the party's favor as to all or any part thereof." Fed. R. Civ. P. 56(b).  Summary

judgment is appropriate where the moving party demonstrates that there is no genuine issue of

material fact as to the existence of an essential element of the nonmoving party's case on which the

nonmoving party would bear the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317,

322 (1986).  "Of course, [the moving party] always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions,

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it

believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323; *See also Gutierrez

v. Lynch*, 826 F.2d 1534, 1536 (6th Cir. 1987).

A fact is "material" for purposes of a motion for summary judgment where proof of that fact

"would have [the] effect of establishing or refuting one of the essential elements of a cause of action

or defense asserted by the parties."  *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir. 1984)

(quoting Black's Law Dictionary 881 (6th ed. 1979)) (citations omitted).  A dispute over a material

fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Conversely, where a reasonable jury could not find for the nonmoving party, there is no genuine issue of material fact for trial. *Feliciano v. City of Cleveland*, 988 F.2d 649, 654 (6th Cir. 1993). In making this evaluation, the court must examine the evidence and draw all reasonable inferences in favor of the non-moving party. *Bender v. Southland Corp.*, 749 F.2d 1205, 1210-11 (6th Cir. 1984).

If this burden is met by the moving party, the non-moving party's failure to make a showing that is "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," will mandate the entry of summary judgment. *Celotex*, 477 U.S. at 322-23. The non-moving party may not rest upon the mere allegations or denials of his pleadings, but the response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts which demonstrate that there is a genuine issue for trial. Fed. R. Civ. P. 56(e). The rule requires the non-moving party to introduce "evidence of evidentiary quality" demonstrating the existence of a material fact. *Bailey v. Floyd County Bd. of Educ.*, 106 F.3d 135, 145 (6th Cir. 1997); *see also Anderson*, 477 U.S. at 252 (holding that the non-moving party must produce more than a scintilla of evidence to survive summary judgment).

## III.   ANALYSIS

Plaintiff asserts his claim under the Federal Tort Claims Act, 28 U.S.C. § 2671 *et seq.* (the "FTCA"). The liability of the United States under the FTCA is determined "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Liability under the FTCA is determined in accordance with "the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b)(1). Plaintiff asserts a claim of premises liability for acts occurring

in Flint, Michigan. The parties agree that the action is to be governed by Michigan law.[2] The parties

further agree that Plaintiff enjoyed the status of a business invitee on Defendant's property.

"In general, a premises possessor owes a duty to an invitee to exercise reasonable care to

protect the invitee from an unreasonable risk of harm caused by a dangerous condition on the land."

*Lugo v. Ameritech Corp., Inc.*, 464 Mich. 512, 516 (2001). A premises owner, however, owes no

duty to protect a business invitee from or to warn of "open and obvious" dangers:

> [I]f the particular activity or condition creates a risk of harm *only* because the invitee
> does not discover the condition or realize its danger, then the open and obvious
> doctrine will cut off liability if the invitee should have discovered the conditions and
> realized its danger. On the other hand, if the risk of harm remains unreasonable,
> despite its obviousness or despite knowledge of it by the invitee, then the
> circumstances may be such that the invitor is required to undertake reasonable
> precautions.

*Lugo*, 464 Mich. at 516-17 (quoting *Bertrand v. Alan Ford, Inc.*, 449 Mich. 606, 611 (1995))

(emphasis in original).

> In sum, the general rule is that a premises possessor is not required to protect an
> invitee from open and obvious dangers, but, if special aspects of a condition make
> even an open and obvious risk unreasonably dangerous, the premises possessor has
> a duty to undertake reasonable precautions to protect invitees from that risk.

*Id.* at 517.

---

[2] Plaintiff also states a claim of negligence, based on the same facts as his premises liability claim, asserting that "continuously adding loose gravel to a paved parking lot without any systematic method to clean it up creates a foreseeable risk of injury from loose footing." (Pl.'s Resp. 12.) This is but another way of saying that Defendant breached a duty to Plaintiff by allowing a dangerous condition to exist on the Post Office premises. The Court concludes that this claim is subject to the same "open and obvious" defense as Plaintiff's premises liability claim. The "open and obvious" doctrine "attacks the duty element that must be established in any 'prima facie negligence case,' not just a failure to warn case." *Millikin v. Walton Manor Mobile Home Park, Inc.*, 234 Mich. App. 490, 495-496, 497 (1999) (holding that the "open and obvious" doctrine "protects against liability whenever injury would have been avoided had an "open and obvious" danger been observed, regardless of the alleged theories of liability.")

A business invitee is not without obligation, however, and is required to exercise ordinary care when visiting a business premises. "Ordinary prudence demands that a view be taken of the place where one is about to step." *Jaworski v. Great Scott Supermarkets, Inc.*, 403 Mich. 689, 698 (1978) (quoting *Goodman v. Theatre Parking, Inc.*, 286 Mich. 80, 83 (1938)). "[I]f the particular activity or condition creates a risk of harm only because the invitee does not discover the condition or realize its danger, then the open and obvious doctrine will cut off liability if the invitee should have discovered the condition and realized its danger." *Bertrand* , 449 Mich. at 611. *See also Kennedy v. Great Atlantic & Pacific Tea Co.*, 274 Mich. App. 710, 713 (2007) ("The test to determine if a danger is open and obvious is whether an average user with ordinary intelligence [would] have been able to discover the danger and the risk presented upon casual inspection. Because the test is objective, this Court looks not whether a particular plaintiff should have known the condition was hazardous, but to whether a reasonable person in his or her position would have foreseen the danger.") (modification in original, internal citations and quotation marks omitted).

With respect to open and obvious dangers then, "the critical question is whether there is evidence that creates a genuine issue of material fact regarding whether there are truly "special aspects" of the open and obvious condition that differentiate the risk from typical open and obvious risks so as to create an unreasonable risk of harm, i.e., whether the "special aspect" of the condition should prevail in imposing liability upon the defendant or the openness and obviousness of the condition should prevail in barring liability." *Lugo*, 464 Mich. at 517-18.

The "special aspects" exception has been interpreted to include two specific types of hazards that, though open and obvious, nonetheless require a heightened duty on the part of the premises

10

owner: (1) those that are unavoidable (such as the only exit from the premises being covered with standing water); and (2) those that present a substantial risk of death or severe injury (such as a thirty foot deep pit in the middle of a parking lot). *Lugo*, 464 Mich. at 518. "In sum, only those special aspects that give rise to a uniquely high likelihood of harm or severity of harm if the risk is not avoided will serve to remove that condition from the open and obvious danger doctrine." *Id*. at 519.

When considering whether the condition creates "special aspects," the inquiry must focus on the risk posed "*a priori*, that is before the incident involved in a particular case." *Id*. at 519 n. 2. "It would, for example, be inappropriate to conclude in a retrospective fashion that merely because a particular plaintiff, in fact, suffered harm or even severe harm, that the condition at issue in a case posed a uniquely high risk of severe injury." *Id*. Summary judgment is appropriate "where no reasonable person could conclude that the open and obvious condition at issue involved special aspects that presented an unreasonable risk to invitees." *Id*.

Plaintiff appears to be claiming, although he has been somewhat inconsistent in his allegations, that the loose gravel, which allegedly erupted from or was blown into the improperly maintained pothole as a result of the windy conditions on the day of his visit to the Post Office, caused him to slip, and to fall in the pothole, fracturing his ankle and lower leg in the process. Potholes in a parking lot are the classic hazard repeatedly cited by Michigan courts as the quintessential example of an open and obvious danger that does not give rise to the special aspects exception. "[T]ypical open and obvious dangers (such as ordinary potholes in a parking lot) do not give rise to these special aspects." *Lugo*, 464 Mich. at 520. The exception, as noted by the court in *Lugo*, might be a thirty foot deep pit in the middle of a parking lot. Discussing the special aspects exception to the open and obvious rule, the court in *Lugo* explained:

11

Using a common pothole as an example, the condition is open and obvious and, thus, cannot form the basis of liability against a premises possessor. The condition does not involve an especially high likelihood of injury. Indeed, an "ordinarily prudent" person would typically be able to see the pothole and avoid it. Further, there is little risk of severe harm. Unlike falling an extended distance, it cannot be expected that a typical person tripping on a pothole and falling to the ground would suffer severe injury.

464 Mich. at 520 (internal citation omitted).

The testimony of Plaintiff and Ms. Johnson describing the size of the alleged pothole varies from 3-6 inches in depth and in width from the size of an 81/2 x 11 sheet of paper to the diameter of a something between a softball and a basketball.[3] The authenticated photographs which were attached to Defendant's motion for summary judgment which depict the area of the parking lot where Plaintiff claims to have slipped and fallen show a much more benign "pothole" than described by either Plaintiff or Ms. Johnson. However, even accepting that Plaintiff and Ms. Johnson accurately described the magnitude of the defect, a pothole of these dimensions would clearly be on the "ordinary" end of the spectrum and would not qualify as a special aspect. *See Malec v. Livonia Mall Merchants Assoc., Inc.*, No. 292989, 2010 WL 4026095, at *2 (Mich. Ct. App. Oct. 14, 2010) (unpublished) (depression in parking lot that was 15 feet long, seven inches wide and three to four

---

[3] Plaintiff has presented no photographic evidence of evidentiary quality to support his claim as to the condition of the specific area in which he claims to have slipped and fallen. No witness, either by way of affidavit or during deposition testimony, verified that the photographs attached to Plaintiff's response depicted the area of Plaintiff's fall, let alone that they depicted that area on the day of the fall. Indeed, witnesses who did speculate as to the photographs surmised that the photographs depicted other areas of the Post Office parking lot not in proximity to the area of Plaintiff's fall. Mr. Woolworth testified that he had never performed repairs in the front of the post office where Plaintiff sustained his fall. (Pl.'s Mot. Ex. 4, Woolworth Dep. 21:6-10.) The best evidence that Plaintiff has presented to establish the condition of the parking lot on the day of his fall in the area where he fell is his testimony and the testimony of Ms. Johnson. The fact that other areas of the parking lot may have been in greater disrepair, on that day or any other, is not relevant and does nothing to support Plaintiff's claim of the alleged condition that caused his fall.

inches deep, that had been refilled to some extent with asphalt, was open and obvious, and created

no special aspects, where the defect could have been discovered on casual examination); *Simcox v.*

*ABC Appliance, Inc.*, No. 261679, 2005 WL 1579725, at *3 (Mich. Ct. App. July 5, 2005)

(unpublished) (holding that a pothole eight inches in diameter and 1 1/2 or 2 inches deep was open

and obvious and not subject to the special aspect exception). That Plaintiff in the instant case,

whether because of his personal characteristics or his "brand new Rockport walking shoes," suffered

a fracture as a result of his fall does not change the analysis: "[A] plaintiff may suffer a more or less

severe injury because of idiosyncratic reasons . . . that are immaterial to whether an open and obvious

danger is nevertheless unreasonably dangerous." *Lugo*, 464 Mich. at 519 n. 2.

      The alleged presence of "loose gravel" in the proximity of the pothole does not change the

Court's analysis. First, loose gravel is a typical parking lot imperfection and frequently accompanies

a parking lot pothole as the result of a breakdown of the surface material of the parking lot or the

disintegration of material that may have been used to fill the pothole. Like the pothole itself, the

loose gravel, which can be expected to surround a parking lot pothole, is as open and obvious as the

pothole itself, as perhaps best illustrated by the photographs which Plaintiff attaches to his response.

Loose gravel can be similarly avoided by an "ordinarily prudent" person. Like the crushed grapes

on the supermarket floor in *Kennedy*, there was nothing unusual or hidden about the loose gravel in

the Post Office parking lot, which Plaintiff and Ms. Johnson testified was very evident to both of

them just after Plaintiff's fall. In *Kennedy*, the court found that plaintiff could not reasonably claim

that the crushed grapes on which he slipped in the supermarket were not open and obvious when he

testified in his deposition that the crushed grapes "were readily observable after he slipped and that

he and several other people noticed the existence of the crushed grapes and grape residue once they

actually looked at the floor. . . . It was no great mystery. There were grapes on the floor." 274 Mich.
App. at 713-14.

Both Ms. Johnson and Plaintiff testified that the loose gravel and the pothole were readily
apparent to them after the fall. Ms. Johnson, who managed to avoid the pothole and gravel while
walking an overlapping line with Plaintiff's path to the Post Office entrance, testified to the visible
presence of gravel and potholes on the ground: "I noticed it was like a lot of loose gravel, it was a
lot of loose gravel on the ground and it was like little potholes." (Def.'s Mot Ex. 5, Johnson Dep.
13:13-16.) Many driveways and public pathways are actually constructed of loose gravel and this
can hardly be said to present a "special aspect" in the nature of thirty foot pit. Moreover, there is no
question that the area was "avoidable." Plaintiff in the instant case admitted that he simply was not
watching where he was walking:

Q:     Well, did you ever see a pothole there?

A:     I was not looking down as I would walk.

       *              *              *

Q:     Again, before you slipped, you did not see a pothole; is that correct?

A:     Correct.

Q:     All right. After you fell, did you see a pothole?

A:     Yes.

Q:     Had you stepped into this pothole?

A:     Yes.

Def.'s Mot. Ex. 4, Turner Dep. 36:9-25. The area surrounding the site of Plaintiff's fall is wide open
and, had he been watching, he could easily have avoided the loose gravel and/or pothole, as Ms.

14

Johnson did while walking an overlapping path to the Post Office entrance.

**IV.    CONCLUSION**

Viewing the facts in the light most favorable to the Plaintiff, the loose gravel and/or pothole in the Flint Post Office parking lot, which Plaintiff claims caused his slip and fall, presented an open and obvious danger, which a reasonable person of ordinary prudence could have noticed and avoided. Plaintiff presented no evidence that the loose gravel and/or pothole had "special aspects" that rendered their openness and obviousness unreasonably dangerous. Accordingly, the Court GRANTS Defendant's motion for summary judgment and DISMISSES Plaintiff's Complaint with prejudice.[4]

IT IS SO ORDERED.

PAUL D. BORMAN
UNITED STATES DISTRICT JUDGE

Dated: 8-9-11

---

[4] Because the Court concludes that Defendant owed Plaintiff no duty to protect him from the open and obvious danger presented by the loose gravel and/or pothole in the Post Office parking lot, the Court need not address the issue of Defendant's actual or constructive knowledge.

15